JOSEPH F. WALSH
Attorney at Law
California State Bar No. 67930
205 S. Broadway, Suite 606
Los Angeles, California 90012
Tel: (213) 627-1793
Fax: (213) 627-1711
Email: attyjoewalsh@aol.com

Attorney for Defendant
SIMON HONG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR-16-0414-GW |
| Plaintiff, | **DEFENDANT HONG'S POSITION OF THE PARTIES RE: SENTENCING** |
| v. | Date: March 6, 2017 |
| SIMON HONG, | Time: 8:00 a.m. |
| Defendant. | |

The Defendant, SIMON HONG, hereby submits the following position of the parties concerning the defendant's sentencing.

Dated: February 10, 2017            /s/ Joseph F. Walsh
                                    JOSEPH F. WALSH
                                    Attorney for Defendant
                                    SIMON HONG

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

The Defendant, SIMON HONG, has pleaded guilty to one count of Medicare Fraud Conspiracy. 18 U.S.C. §1349. Simon Hong owned and operated a medical clinic, TH Physical Therapy, in Walnut, California, from May 2009 through December 2012. He hired physical therapists, such as, Roderick Concepcion, to perform physical therapy and occupational therapy. Many of the patients at JH Physical Therapy were treated with acupuncture and massage, which is not compensable under Medicare.

In order to receive payment for their work, the Defendant and the physical therapists prepared fraudulent claims to Medicare, stating that the patients had received physical therapy or occupational therapy, when in fact they had not. The clinic received $2.4 million dollars in Medicare payments, which was divided among the physical therapists and the Defendant, Simon Hong. Simon Hong received a larger share of the Medicare payments because he would pay all of the clinic's overhead costs, such as the rent and the salaries of the employees.

**II.  THE GUIDELINES**

The Probation Report has calculated the Guidelines as follows. The Base Offense Level is 6. The total amount of the Medicare claims submitted was $3.45 million dollars. That was the intended loss, which resulted in a 16 level increase for the Loss. The Report finds 10 or more victims by identifying the patients, who lost no money, as victims, and increased the offense level by

2 for the number of victims.  The Defendant objects to the 2 level increase for the number of victims.

The Report adds 2 levels for involvement of a Government Health Care Program with more than a million dollars in loss.  The Report found that the Defendant was an organizer, leader, or manager of five or more participants and recommends a 4 level increase for role in the offense.  The Defendant objects to the 4 level increase for role in the offense.  The total adjusted offense level set forth in the Probation Report is Level 30.

There is a 3 level reduction for acceptance of responsibility.  This results in a Final Total Offense Level of 27.  The Defendant has a prior sentence of 121 months for which he is given 3 Criminal History Points, resulting in placing him in Criminal History Category II.  The sentence range is 78 to 97 Months.

As more fully explained below, the Defendant urges the Court to calculate the Guidelines as follows.  The Base Offense level is 6.  There is a 16 level increase for the Loss.  There is no increase for the number of victims.  There is a 2 level increase for a Government Health Care Program.  There is no increase for role in the offense.  The total adjusted offense level should be Level 24.  There is a 3 level decrease for acceptance of responsibility.  The Final Offense Level should be Level 21.  In Criminal History Category II the sentence range is 41 to 51 months.  The Defendant would ask the Court to grant a downward departure of 3 levels on the grounds that the loss amount

overstates the seriousness of the offense. This would result in a Final Offense Level of 18, which in Category II has a sentence range of 30 to 37 months. The Defendant asks for a sentence of 30 months or less.

The Probation Officer recommends imposing the low end of 78 Months, concurrently with the Defendant's sentence of 121 Months imposed in his case before Judge Carter. Indeed, the plea agreement has a provision in which the Government agrees to recommend that the sentence in this case be imposed concurrently with the sentence in the Judge Carter case. The Defendant asks that any sentence imposed by the Court be imposed concurrently with the 121 sentence imposed in the Defendant's case before Judge Carter in <u>United States v Simon Hong</u>, CR-16-38-DOC.

**III. THERE IS ONLY ONE VICTIM, MEDICARE, AND THERE SHOULD BE NO TWO LEVEL INCREASE FOR TEN OR MORE VICTIMS**

The Defendant objects to the 2 level increase for more than 10 victims. The Probation Report recommends a 2 level increase for more than 10 victims. The Report states that hundreds of patients had their Medicare Card numbers used unlawfully in order to make fraudulent medicare claims. Thus, since there were hundreds of patient victims, the 2 level increase applied. PSR, p. 11, par. 69. However, none of the patients suffered any monetary loss. There is only one victim who suffered a monetary loss in this case and that one victim is the Medicare

Program.  There is no increase in the Guideline calculation if there is only a single victim.

The Probation Report states that the patients are victims because their means of identification was used unlawfully. §2B1.1, App. Note 4(E).  However, this definition of victims is used in credit card fraud cases and identity theft cases where the victims did not suffer any monetary losses.  This would occur when, for example, the bank is alerted to the fraud, before any customer losses any money.  The Defendant's case does not involve credit card fraud or identity theft.  The Defendant's case also has an actual monetary loss of $2 million dollars that was paid out as a result of the fraudulent claims.  Where there is an actual victim who has suffered a monetary loss, there is no need to apply Application Note 4(E)'s definition of victim.

The Guidelines section for an increase for the number of victims is §2B1.1(b)(2).  In <u>United States v. Armstead</u>, 552 F.3d 769, 780-781 (9th Cir. 2008) the Ninth Circuit held it was error for a district court to find that a bank fraud conspiracy involved over fifty victims.  The district court arrived at this number by adding the number of banks and victims who had a monetary loss and the number of individuals and companies whose personal information was stolen by who had no monetary loss.  The Government proffered at sentencing that the individuals and companies with no monetary loss suffered pecuniary losses in the form of "getting a new driver's license, or having to figure out how to put a fraud alert on your account and spending money to correct credit."

The Defendant in Armstead argued that the district court erred by counting as victims those individuals and companies whose losses were not included in the loss calculation. The Ninth Circuit agreed and held that the district court erred by including those individuals in the number-of-victims calculation. The Court reasoned that the Guidelines define victim as "any person who sustained any part of the actual loss determined under subsection (b)(1)." U.S.S.G. § 2B1.1, Commentary n.1. "'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1, Commentary n.3(A)(i). "'Pecuniary harm' means harm that is monetary or that otherwise is readily measurable in money." U.S.S.G. § 2B1.1, Commentary n.3(A)(iii). "Thus, in order to be counted as a victim, a person must have sustained a loss that is 'monetary or that otherwise is readily measurable in money.'" United States v. Armstead, supra, 552 F.3d at 781.

In Armstead, the correct loss calculation pursuant to U.S.S.G. § 2B1.1(b)(1) included only losses to the thirteen banks and three victims of retail fraud. While other persons conceivably may have sustained pecuniary harm in the form of time and money spent procuring new identification and credit cards, opening new bank accounts, and mending their credit, those losses should not have been included in the calculated loss amount. Therefore, it was error to include those individuals in the number-of-victims calculation. United States v. Armstead, supra, 552 F.3d at 780-781.

In the Defendant's case, there was a victim that suffered a monetary loss. It was the Medicare Program. The patients whose means of identification were used unlawfully suffered no monetary loss. The number of victims must be tied to the loss calculation. In this case, there was a $2 million dollar loss suffered by a single victim. Thus, there is only one victim in this case and it is error to include any of the patients in the number of victims calculation. The Court should not add a 2 level increase for more than 10 victims.

**IV.  THERE SHOULD BE NO INCREASE FOR ROLE IN THE OFFENSE BECAUSE THE DEFENDANT AND THE PHYSICAL THERAPISTS WERE CO-EQUAL PARTICIPANTS IN THE CONSPIRACY**

The Defendant objects to the 4 level increase in the Guideline score recommended by the probation officer for role in the offense. PSR, pp. 12-13. The 4 level increase in not applicable because the Defendant and the physical therapists were co-equal members of the conspiracy. There was no one defendant who was the leader or manager with authority over the others.

To qualify for an aggravating role the court must find that the defendant was "an organizer, leader, manager or supervisor in criminal activity." U.S.S.G. § 3B1.1. To sustain a finding of an aggravated role under § 3B1.1, there must be evidence that the defendant "exercised some control over others involved in the commission of the offense [or was] responsible for organizing others for the purpose of carrying out the crime." United States v. Harper, 33 F.3d 1143, 1151 (9th Cir. 1994);

7

United States v. Mares-Molina, 913 F.2d 770, 773 (9th Cir. 1990); United States v Riley, 335 F.3d 919, 929 (9th Cir. 2003). [1]

In Mares-Molina, the Court adopted a First Circuit holding that for an upward adjustment under § 3B1.1 "the defendant must have exercised some control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime." United States v. Mares-Molina, supra, 913 F.2d at 774. (quoting United States v. Fuller, 897 F.2d 1217, 1220 (1st Cir. 1990)).

In Mares-Molina, a defendant knowingly leased his warehouse to individuals who used it to store cocaine. The Ninth Circuit held that the district court's finding that the defendant was an organizer or manager was clearly erroneous. Id. 913 F.2d at 774;["We cannot conclude that Mares organized or controlled his coconspirators within the meaning of section 3B1.1(c) merely because he was the owner of the trucking business which leased the warehouse in which the cocaine was off-loaded."]

In United States v Fuller, 897 F.2d 1217, 1220 (1st Cir. 1990) the Court stated that "Many offenses are committed by a single individual or by individuals of roughly equal culpability so that none of them will receive an adjustment under this Part."

---

[1] The Commentary to that section states: "Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." Commentary, App. Note 4.

In <u>Fuller</u>, the Court reversed a finding of an upward adjustment for an aggravating role where the defendant sold marijuana on six occasions to a co-defendant, who had been trafficking in marijuana before buying from Fuller.

In <u>United States v Hoac</u>, 990 F.2d 1099, 1110-1111 (9th Cir. 1993) the Court reversed a finding of an aggravating role for the defendant Chan. The evidence in the case showed that Chan had opened a trading company to export heroin. He reserved the shipping date and arranged for the shipping containers. He helped the co-defendant Leung in placing the heroin in cans and in loading the cans into the shipping containers. Chan had been promised $50,000 by Leung if the shipment was successful. In reversing an aggravated role enhancement for Chan the Court stated:

> We do not believe that the district court, properly applying the Mares-Molina standard, could have found by a preponderance of the evidence that Chan was "an organizer, leader, manager, or supervisor" under § 3B1.1(c). At sentencing the government argued that the two-level increase was justified because Chan opened the trading company to export the heroin, reserved a shipping date and arranged for a shipping container, assisted Leung in placing the heroin in the cans and loading the shipping container, was promised $50,000-$70,000 by Leung if the shipment was successful, and at the time of his arrest possessed the rental contract and keys for the packing warehouse. While all of these facts suggest that Chan was perhaps one of the more culpable defendants, they do not indicate that he exercised "control over others" or was "responsible for organizing others" so as to justify an increase under § 3B1.1(c). (990 F.2d at 1110-1111)

In <u>United States v Parker</u>, 241 F.3d 1114, 1120-1121 (9th Cir. 2001) the Court found that a defendant did not qualify for a 2 level enhancement under a related guideline section, 3B1.4, for using or attempting to use a minor to commit an offense because the defendant and the minor were both equally involved in the offense as co-conspirators. The Court stated:

> "We hold that a defendant's participation in an armed bank robbery with a minor does not warrant a sentence enhancement under § 3B1.4 in the absence of evidence that the defendant acted affirmatively to involve the minor in the robbery, beyond merely acting as his partner. See United States v. Butler, 207 F.3d 839, 848 (6th Cir. 2000). Here there was no such evidence: The district court's finding was that Parker and Baylon were merely co-conspirators. The fact that Defendant was the minor's partner and profited from his participation in the crime does not show that he acted affirmatively to involve Baylon. (241 F.2d at 1120-1121)

In the Defendant Hong's case, the Defendant and the physical therapists were partners in the medical clinics. It is true that the Defendant receive a greater share of the Medicare billing, but it is also true that part of that money was used to pay the rent on the medical clinic and pay the salaries of the support staff. There were receptionists, office staff, massage therapists, and acupuncture therapists. Once those expenses were paid, the division of the Medicare proceeds were essentially comparable with one another.

No one defendant had any greater authority than another. There was no one defendant who gave orders to the others. This is a case where all of the defendants were equally culpable. Under

these circumstances, there is no support for the Defendant receiving an increase for role in the offense.

### V. THE COURT SHOULD GRANT A DOWNWARD DEPARTURE BECAUSE THE LOSS AMOUNT OVERSTATES THE SERIOUSNESS OF THE OFFENSE

The Guidelines sentence calculated by the Probation Report is substantially driven by the amount of the loss. In this case the intended loss is $3.4 million dollars, which has resulted in a 16 level increase in the Guideline score. The Defendant urges the Court to grant a downward departure of 3 levels on the grounds that the loss amount overstates the seriousness of the offense.

This Departure is authorized in the Guidelines in Section 2B1.1, Application Note 20 ( C), which states that: "There may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure may be warranted."

In the Defendant's case, the Probation Report estimates the actual loss to be $2.4 million dollars, and the intended loss to be $3.4 million dollars. PSR, p. 11, par. 68. However, not all of the medical claims submitted to Medicare were false claims. There were patients who did receive physical therapy and occupational therapy, although a substantial majority of the patients did not receive such therapy. Those patients received massage therapy and acupuncture therapy, which Medicare does not cover.

Thus, this is not a case where the treatment was non-existent. In fact, many of the elderly patients benefitted from the massage and acupuncture treatments. The essence of the fraud was that Medicare does not cover such treatment and the claims falsely stated that the treatment was physical and occupational therapy.

The Defendant in making this argument is not claiming his conduct was lawful. His argument focuses only on the issue of whether the Guideline level in this case, driven by the dollar amount of the Medicare claims alone, "overstates the seriousness of the offense," within the meaning of Application Note 20 ( C). The Defendant urges the Court to find that it does and to grant a 3 level downward departure in the Guideline level.

**VI. BASED ON THE 3553(A) FACTORS, THE COURT SHOULD GRANT HIS REQUEST FOR A CONCURRENT SENTENCE**

The Defendant, Simon Hong, urges the Court to impose his sentence concurrently with the 121 months sentence he has received in his case before Judge Carter in <u>United States v Simon Hong</u>, CR-16-38-DOC. A concurrent sentence is appropriate in this case for several reasons. Mr. Hong had no prior criminal record prior to his indictment in this case and the companion case before Judge Carter. He is married and has a daughter, who is in school. He is a naturalized United States citizen. Before he was remanded, he was working as a salesman for his brother's company, Natural Wayz, in El Monte. He was also active in his church.

Mr. Hong has attached four letters of reference to this sentencing brief.  Pastor David Kim of the Brea Korean Community Church states that Simon Hong has been a member of the Church since 2003.  During that time, Mr. Hong was a "sincere and kind member of the church" who "loved to serve others in need."

Ester Hong is the daughter of Simon Hong.  She writes that her father was a "good father" who was a "hardworking and generous man."   Grace Hong is the wife of Simon Hong.  She describes her husband as "a good husband and father."  She states that "We deeply regret the facts which lead to the current situation."

Finally, Sara Shin, Simon Hong's mother, writes that "Simon has been the most kind and courteous among his five siblings.  Always showed respect to the elders and cared for others before him."

Simon Hong has already received a 121 month sentence in a related case before Judge Carter.  See, <u>United States v Simon Hong</u>, CR-16-38-DOC.  That is a substantial sentence which provides adequate punishment for Mr. Hong's overall criminal conduct.  It will certainly deter Mr. Hong from any future criminal conduct.  It certainly provides adequate protection of the public and promotes respect for the law.  No additional consecutive sentence is needed in this case.

Therefore, the Defendant urges the Court to follow both the recommendation of the probation officer and the recommendation of the Government and impose a sentence in this case that is

concurrent with his 121 month sentence in <u>United States v Simon Hong</u>, CR-16-38-DOC.  Based upon the above arguments, he asks the Court to find that his final offense level is level 18, which in Category II has a sentence range of 30 to 37 months.  He asks the Court to impose no more than a 30 months concurrent sentence in this case.

Dated:   February 10, 2017            Respectfully Submitted,

/s/ Joseph F. Walsh
JOSEPH F. WALSH
Attorney for Defendant
SIMON HONG

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.

I am over the age of 18 and not a party to the within action; my business address is 205 S. Broadway, Suite 606, Los Angeles, California 90012.

On February 10, 2017, I served the foregoing document described as **DEFENDANT HONG'S POSITION OF THE PARTIES RE: SENTENCING** on interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

GREGORY VIDANA
U.S. PROBATION OFFICER
411 W. FOURTH STREET, SUITE 4107
SANTA ANA, CA. 92701

I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it is deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date on the envelope is more than one day after date of deposit for mailing contained in the affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 10, 2017 at Los Angeles, California.

/s/ Joseph Walsh
JOSEPH WALSH