EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
NIALL M. O'DONNELL (D.C. Bar No. 991519)
Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
    4811 Airport Plaza Drive, 5th floor
    Long Beach, California 90812
    Telephone: (202) 257-3295
    E-mail: niall.odonnell@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> SIMON HONG, <br><br> Defendant. | No. CR 16-0414-GW <br><br> GOVERNMENT'S RESPONSE TO PRESENTENCE REPORT AND SENTENCING POSITION REGARDING DEFENDANT SIMON HONG <br><br> Hearing Date: March 6, 2017 <br> Hearing Time: 8:00 a.m. <br> Location:   Courtroom of the <br>                   Hon. George H. Wu |

     Plaintiff United States of America, by and through its counsel of record, the Fraud Section of the Criminal Division of the United States Department of Justice and the United States Attorney for the Central District of California hereby files its Response to Presentence Report and Sentencing Position Regarding Defendant Simon Hong.

     This position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

| | | |
|---|---|---|
| 1 | Dated: February 26, 2016 | Respectfully submitted, |
| 2 | | EILEEN M. DECKER |
| | | United States Attorney |
| 3 | | |
| | | LAWRENCE S. MIDDLETON |
| 4 | | Assistant United States Attorney |
| | | Chief, Criminal Division |
| 5 | | |
| 6 | | ___/s/_____ |
| | | NIALL M. O'DONNELL |
| 7 | | Trial Attorney |
| | | Criminal Division, Fraud Section |
| 8 | | United States Department of Justice |
| 9 | | Attorneys for Plaintiff |
| | | UNITED STATES OF AMERICA |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

The United States hereby files its sentencing position for defendant Simon Hong ("defendant"), who plead guilty to Count One of the indictment, which charged defendant with one count of Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349.

The United States Probation Office ("USPO") calculates defendant's applicable offense level as 27, criminal history as II, and Guidelines imprisonment range as 78-97 months. (PSR at 3.) In doing so, the USPO included a two-level increase for an offense affecting ten or more victims and a four-level increase for Aggravating Role (*id.* ¶¶ 69, 74). The USPO also notes that the Court may impose three years' supervised release and $2,407,857.16 in restitution. (*Id.* ¶¶ 123, 131.)

Based on the reasons identified below, the United States calculates defendant's applicable offense level as 25, as specified in the plea agreement, and defendant's Guidelines range as 63-78 months, based on a Criminal History Category II. Considering the sentencing factors laid out in 18 U.S.C. § 3553(a), the government recommends a low-end Sentencing Guidelines sentence of 63 months, to be served concurrently with defendant's sentence in *United States v. Simon Hong*, Case No. CR 16-0038-DOC (C.D. Cal.), followed by three years' supervised release, and $2,407,857.16 in restitution.

**II. PROCEDURAL BACKGROUND**

On June 16, 2016, defendant was indicted on one count of Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349 and seven counts of Health Care Fraud in violation of 18 U.S.C. §§ 1347 and 2(b). On December 15, 2016, defendant pleaded

guilty pursuant to a plea agreement to Count One of the indictment, charging Conspiracy to Commit Health Care Fraud.

Before being indicted in this case, on January 27, 2016, defendant was charged in a separate indictment in *United States v. Simon Hong*, Case No. CR 16-0038-DOC (C.D. Cal.), with eight counts of Health Care Fraud, nine counts of Illegal Kickbacks, and two counts of Aggravated Identity Theft. The charges stemmed from defendant's participation in a separate scheme from the instant matter, where the co-schemers recruited Medicare beneficiaries and submitted fraudulent billing for medically unnecessary physical therapy services that were either never provided or provided by unlicensed individuals at additional clinic locations owned by defendant. On October 19, 2016, a jury convicted defendant of all counts. On January 9, 2017, District Judge David O. Carter sentenced defendant to 121 months' imprisonment, three years' supervised release, and $2,929,775 in restitution.

**III. STATEMENT OF FACTS**

    A.   The Instant Case

From around May 2009 until December 2012, the defendant owned, operated, and controlled a therapy clinic known as JH Physical Therapy, Inc., ("JH Physical Therapy"), located in Walnut, California. Although defendant leased, owned, and controlled JH Physical Therapy, he hid his ownership in the name of coconspirator Roderick Belmonte Concepcion ("Concepcion"), an occupational therapist. And in order to be able to bill Medicare, defendant caused the submission of Medicare enrollment documents for JH Physical Therapy that falsely listed Concepcion as the owner.

As the owner of JH Physical Therapy, defendant then hired and recruited other coconspirator therapists, including Concepcion, who in turn recruited additional coconspirators, including codefendant occupational therapist Keith Canlapan. Defendant also employed non-licensed personnel at JH Physical Therapy to provide non-therapeutic massage and acupuncture to Medicare beneficiaries. Once beneficiaries visited JH Physical Therapy, they were often only provided with acupuncture and non-therapeutic massage services from individuals who were not licensed to perform occupational or physical therapy. Defendant knew that Medicare did not pay for acupuncture services or massage unless the massage is provided by a licensed therapist as part of a Medicare beneficiary's plan of care. As part of the fraud, defendant then directed coconspirator therapists to fabricate medical records to make it appear Medicare beneficiaries had received occupational and physical therapy from licensed therapists, even though defendant knew the beneficiaries had not received any such services. Defendant then caused the submission of false and fraudulent claims to Medicare for occupational and physical therapy services that defendant knew were never provided.

As a direct result of defendant's conduct, between in or around October 2, 2009, and December 14, 2012, defendant and his coconspirators submitted or caused the submission of false and fraudulent claims to Medicare totaling approximately $3,454,485.69, of which Medicare paid approximately $2,407,857.16.

B. Separate Scheme – *United States v. Simon Hong*,
Case No. CR 16-0038-DOC (C.D. Cal.) (Relevant Conduct)

From May 2009 to at least November 2013, defendant participated in the scheme to defraud Medicare through additional clinics owned and controlled by defendant. As part of this scheme, defendant received illegal kickbacks for referrals of Medicare beneficiaries to Rehab Dynamics, Inc. ("Rehab Dynamics") and RSG Rehab Team, Inc. ("RSG"), which employed licensed physical therapists able to bill Medicare. As happened in the instant case, beneficiaries brought to the clinics owned by defendant often only received acupuncture and non-therapeutic massage services from individuals not licensed to perform physical therapy, which defendant knew were not covered by Medicare. Defendant knew that the physical therapists employed by Rehab Dynamics and RSG had evaluated some, but not all, of these beneficiaries and created plans of physical therapy treatment for them, even though many of these beneficiaries never received any physical therapy services.

Defendant then caused Rehab Dynamics and RSG to submit claims to Medicare for physical therapy services that had never been provided to the beneficiaries at defendant's clinics. And, similar to the scheme in this case, defendant caused others to falsify records to make it appear as though the services billed had been provided by licensed physical therapists when, in fact, those services often were not provided or were provided by unlicensed individuals. Defendant also encouraged other criminal participants to engage in similar schemes and taught them how to illegally operate Medicare clinics.[1]

---

[1] For example, defendant Byong Min was charged in Case No. CR 16-0018-DOC, which was related to Case No. CR 16-0038-DOC.

As a result of the fraudulent claims caused to be submitted by defendant, between in or around May 2009 to at least November 2013, Medicare paid approximately $2,929,775 to Rehab Dynamics and RST for fraudulent physical therapy services purportedly performed at defendant's clinics. As payment for his part of the scheme, Rehab Dynamics and RST then paid defendant approximately 56 percent of the fraudulent payments from Medicare.

## IV. GUIDELINES CALCULATION

### A. Presentence Investigation Report

In the Presentence Investigative Report ("PSR"), the USPO calculated defendant's offense level of 27, with a criminal history category II, as follows:

| | | |
|---|---|---|
| Base Offense Level : | 6 | [U.S.S.G. § 2B1.1(a)(2)] |
| Loss Amount : ($1.5m–$3.5m) | +16 | [U.S.S.G. § 2B1.1(b)(1)(I)] |
| Ten or More Victims : | +2 | [U.S.S.G. § 2B1.1(b)(2)(A)] |
| Health Care Fraud : Offense > $1m | +2 | [U.S.S.G. § 2B1.1(b)(7)] |
| Aggravating Role : (Organizer/Leader) | +4 | [U.S.S.G. § 3B1.1(a)] |
| Acceptance of : Responsibility | -3 | [U.S.S.G. § 3E1.1] |
| Total : | 27 (78–97 months) | |

In the plea agreement, the United States and defendant agreed to the applicability of the above provisions, except for the enhancement for 10 or More Victims and the enhancement for Aggravating Role, which the parties expressly reserved the right to argue at

5

sentencing.[2] The United States therefore agrees with the PSR's calculation of the Guidelines range, except for the applicability of the 2-level enhancement for 10 or more victims pursuant to U.S.S.G. § 2B1.1(b)(2)(A).

### B. Loss Amount

In the plea agreement, the parties agreed to an intended loss amount of $3,454,485.69 in false and fraudulent claims submitted by defendant and his coconspirators, of which Medicare paid $2,407,857.16. Pursuant to the Guidelines, the loss amount "is the greater of actual loss *or* intended loss." U.S.S.G. § 2B1.1 Application Note 3(A) (emphasis added). The Commentary to U.S.S.G. § 2B1.1 state that "[i]n cases in which the defendant is convicted of a Federal health care offense involving a Government health care program [i.e., Medicare], the aggregate dollar amount of fraudulent bills submitted to [Medicare] shall constitute prima facie evidence of the amount of the intended loss, i.e., is evidence sufficient to establish the amount of the intended loss, if not rebutted." *Id.*, Application Note 3(F)(viii). The Ninth Circuit and numerous other courts have reached the same conclusion that the amount billed to Medicare is the proper measure of the intended loss under U.S.S.G. § 2B1.1. *See, e.g.*, *United States v. Popov*, 742 F.3d 911, 916 (9th Cir. 2014) ("[T]he amount billed to an insurer shall constitute prima facie evidence of intended loss for sentencing purposes"); *United*

---

[2] In the plea agreement, the United States and defendant agreed to the following applicable Guidelines provisions: (1) +6 base offense level pursuant to U.S.S.G. § 2B1.1(a)(2); (2) +16 for intended loss between $1.5 million and $3.5 million pursuant to U.S.S.G. § 2B1.1(b)(1)(I); and +2 for health care fraud offense with loss over $1 million pursuant to U.S.S.G. § 2B1.1(b)(7). The United States and defendant specifically reserved their right to argue for additional specific offense characteristics, including for Aggravating Role.

6

*States v. Shepherd*, 171 Fed. App'x 611, 615 (9th Cir. 2006) (unpublished) ("Shepherd billed for over $800,000, and thus intended to deprive Medicare of that amount, regardless of how much was actually collected."). Therefore, the amount billed to Medicare by defendant's conspiracy — $3,454,485.69 — is the appropriate amount for the purposes of determining the intended loss under U.S.S.G. § 2B1.1, and the PSR correctly applied a 16-level enhancement for an intended loss between $1.5 million and $3.5 million pursuant to U.S.S.G. § 2B1.1(b)(1)(I).

### C. 10 or More Victims Enhancement

The USPO recommends a 2-level enhancement for an offense with 10 or more victims pursuant to U.S.S.G. § 2B1.1(b)(2)(A). (PSR ¶ 69.) Specifically, the USPO stated the Guidelines define the term "victim" to include any individual whose means of identification was used unlawfully or without authority. *Id.* (citing U.S.S.G. § 2B1.1(b)(2)(A) Application Note 4(E)). The USPO also cited how the Guidelines define "means of identification" as the same as in 18 U.S.C. § 1028(d)(7), which includes name, social security number, date of birth, official government issued identification number, or unique electronic identification number. (PSR ¶ 69) (citing U.S.S.G. § 2B1.1(b)(2)(A) Application Note 1).

Although the USPO's analysis is reasonable and the enhancement arguably could apply, the government respectfully declines to seek it in this case. First, based on the charged offense of Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349, the government believes Medicare is the victim. Title 18, United States Code, Section 3663A(2) defines a victim as "a person directly and proximately harmed as a result of the commission of an offense for

7

1  which restitution may be ordered." Furthermore, the government is not
2  aware of patients being directly harmed from defendant's conduct.
3       <u>Second</u>, the PSR cites to Application Note 4(E)(ii) to support
4  its two level enhancement for 10 or more victims. This particular
5  Application Note was so amended in the 2009 Guidelines, in response
6  to a congressional directive to the Sentencing Commission to "review
7  its guidelines and policy statements applicable to persons convicted
8  of offenses under sections 1028, 1028A, 1030, 2511, and 2701 of title
9  18, United States Code, and any other relevant provisions of law . .
10 . ." Identity Theft Enforcement and Restitution Act of 2007, S. 2168,
11 110th Congress § 10 (2008).[3] Here, by comparison, defendant has plead
12 guilty to conspiracy to commit health care fraud.
13      <u>Third</u>, the government is concerned that such an enhancement will
14 create a disparate result in sentencings in related matters to this
15 case as well as other Medicare fraud offenses. For example, the USPO
16 has not recommended such an enhancement in the PSR for coconspirator
17 Roderick Concepcion, Case No. CR 15-00684-GW. As such, by applying it
18 only in this case would create a sentencing disparity.
19      **D.   Health Care Fraud Enhancement**
20      The parties agreed to, and the USPO correctly applied, a 2-level
21 enhancement for loss to a government health care program over
22 $1 million pursuant to pursuant to U.S.S.G. § 2B1.1(b)(7). As a
23 result of defendant's role in the health care fraud scheme, the
24 conspirators submitted approximately $3,454,485.69 in false and
25 fraudulent claims at issue in his case, of which Medicare paid
26 approximately $2,407,857.16. Therefore, Medicare's loss based on the

---

[3] Attached as Exhibit A.

8

defendant's conduct is over $1 million, and a 2-level enhancement applies.

### E. Aggravating Role

As stated, in the plea agreement, the parties agreed to leave open for argument the applicability of the enhancement for Aggravating Role under U.S.S.G. § 3B1.1. The USPO correctly concluded that defendant was an "organizer or leader" of a Medicare fraud scheme involving "five or more participants" or was "otherwise extensive." Therefore, an additional 4-level enhancement applies pursuant to U.S.S.G. § 3B1.1.

The Guidelines identify factors to be considered in determining a defendant's role, including "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *Id.*, Application Note 4.

First, the evidence shows the defendant was the "organizer or leader" of the Medicare fraud scheme in this case. Pursuant to the defendant's admissions in his plea agreement, the defendant was the actual owner and operator of JH Physical Therapy, which submitted false claims to Medicare for therapy services that were not provided and not medically necessary. The defendant admitted he hid his ownership in the name of one of his employees, occupational therapist Roderick Concepcion. Concepcion also stated that defendant hired him to work at JH Physical Therapy and directed him in opening a bank account in Concepcion's name, and in posing as JH Physical Therapy's

9

owner in the provider application the defendant submitted to Medicare. In his plea agreement, defendant also admitted that he directed coconspirators to fabricate medical records to falsely reflect the Medicare beneficiary patients had received occupational and physical therapy services from licensed therapists, even though he knew the patients had not received any such services.

Concepcion also confirmed defendant's role as the leader of the fraud scheme, stating defendant wrote the payment checks to the clinic's employees, and was known to everyone who worked at the clinic as the boss. Defendant also directed the specifics of how false claims were to be submitted to Medicare; Concepcion stated that he had asked defendant if he could reduce the number of units of therapy per patient from the maximum of five units. In response, defendant stated he had been maximizing the number of therapy units for a couple of years, and that he would lose money if he reduced it to only three or four units per patient. Concepcion stated defendant also paid him for patients Concepcion recruited in the form of a recruitment fee of five percent of payments for those patients. Defendant also enjoyed the lion's share of proceeds from the fraud, funneling 87 percent of money received by JH Physical Therapy from Medicare to companies controlled by defendant.

Defendant also directed Concepcion in an attempt to cover up the conspiracy from law enforcement. After Concepcion was first contacted by law enforcement agents, he stated defendant instructed him to recruit other licensed therapists who would agree to fill out fabricated paperwork for therapists who were out of the country on dates and times when the records falsely depicted them as treating

patients at the clinic. Defendant also told Concepcion he should lie to the agents who spoke with him.

Second, the conspiracy to which defendant has pleaded guilty involved more than five participants or was "otherwise extensive." The term "participant" is defined to mean someone "who is criminally responsible for the commission of the offense." U.S.S.G. § 3B1.1, Application Note 1. However, in assessing whether an organization is "otherwise extensive," "all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." *Id.*, Application Note 3. The conspiracy in this case involved more than five participants: defendant; coconspirator Concepcion; codefendant Grace Hong; codefendant Keith Canlapan; and additional unindicted coconspirators, including a recruiter, therapists, reception staff at JH Physical Therapy, and a number of unlicensed therapists. These individuals played different roles in the fraud: codefendant Grace Hong gave Concepcion patient charts to fill out without seeing the actual patients, and told him his job was to fill out the charts to make it appear that he had provided the services, which he then did. Further, Concepcion stated Unindicted Coconspirator 1 ("UC1"), who worked as a recruiter for JH Physical Therapy, told him that he would not have to see patients, but that he would be filling out the files for those patients regardless if he saw them or not. Concepcion also stated UC1 also knew that the patients were receiving acupuncture and massage — not physical therapy. Additional therapists hired by the defendant at JH Physical Therapy who falsified patient files to reflect services not rendered were codefendant Keith Canlapan (who has also pleaded

11

guilty to health care fraud conspiracy), and Unindicted Coconspirators 2 and 3 ("UC2" and "UC3"). Further, Concepcion also stated that reception staff at the clinic directed patients to write multiple signatures on attendance sheets so that dates could be added later, and that codefendant Grace Hong also had patients sign attendance sheets multiple times on one visit. Finally, defendant employed a number of unlicensed acupuncture and massage staff, who provided the acupuncture and massages the defendant later falsely billed to Medicare as occupational and physical therapy services. Therefore, the evidence supports a finding of the defendant's role as an organizer and leader of a conspiracy with five or more participants or otherwise extensive.[4]

**F.   Acceptance of Responsibility**

Defendant has demonstrated acceptance of responsibility under § 3E1.1(a) and he has done so in a "timely" manner pursuant to § 3E1.1(b), yielding a total reduction of 3 levels.

**G.   Total Offense Calculation**

Based on the United States' calculation of the appropriate enhancements, defendant's offense level is calculated as 25 with a corresponding Sentencing Guidelines range of 63-78 months, based on Criminal History Category II.

---

[4] In Case No. CR 16-0038-DOC, the USPO recommended and Judge Carter found that the four-level organizer/leader enhancement applied to defendant based on his conduct in that case, which is extremely similar to that in this case – namely leading a fraudulent therapy scheme on the Medicare program, employing numerous coconspirators, including therapists, and directing the fabrication of records to cover up the fact that beneficiaries only received non-covered acupuncture and massages at defendant's clinics. In both Case No. 16-0038-DOC, as in the instant case, the defendant also enjoyed the majority of the fraud proceeds.

**IV.  ARGUMENT**

The government recommends a low-end Guidelines' range sentence of 63 months, followed by a three-year term of supervised release, and a restitution order of $2,407,857.16.

**A.  Legal Standard**

While not definitive, the Guidelines range provides the starting point for finding a reasonable sentence and must then be considered with the factors set forth in Section 3553(a). *United States v. Cantrell*, 433 F.3d 1296, 1279 (9th Cir. 2006). "To comply with the requirements of *Booker*, the district court must have sufficiently considered the Guidelines as well as the other factors listed in § 3553(a). This requirement does not necessitate a specific articulation of each factor separately, but rather a showing that the district court considered the statutorily-designated factors in imposing a sentence." *United States v. Nichols*, 464 F.3d 1117, 1125 (9th Cir. 2006) (internal quotation and quotation marks omitted).

**B.  Sentencing Factors — 18 U.S.C. § 3553(a)**

  1.  <u>Nature and Circumstances of the Offense</u>

As described in the Statement of Facts, *supra*, defendant stole at least $2.4 million from the Medicare program, a federal taxpayer-funded program designed to provide critical health services for the elderly and the disabled. Schemes targeting Medicare steal money that could have been used to provide valuable health care benefits to patients needing care.  These types of schemes threaten the viability of the Medicare program, which can hardly afford such theft, and jeopardize its ability to provide much needed health care benefits to the elderly and disabled.

2. <u>History and Characteristics of the Defendant</u>

The instant offense is part of a pattern of fraud on Medicare. As described, *supra*, on October 19, 2016, a jury convicted defendant of eight counts of Health Care Fraud, nine counts of Illegal Kickbacks, and two counts of Aggravated Identity Theft in Case No. CR 16-0038-DOC. Based on his leadership of the scheme to bill Medicare for medically unnecessary physical therapy services that were either never provided or provided by unlicensed individuals at additional clinic locations owned by defendant, defendant was sentenced to 121 months' imprisonment, three years' supervised release, and $2,929,775 in restitution.

Defendant likewise directed the scheme in this case, submitting false claims to Medicare for services not rendered and falsifying paperwork to support those false claims, with no concern for the actual medical needs of the patients.

3. <u>Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence</u>

Section 3553(a)(2) states that at sentencing, the court shall consider, among other things, the need for the sentence imposed "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; [and] (C) to protect the public from further crimes of the defendant . . . ." 18 U.S.C. § 3553(a)(2).

A Guidelines sentence in this case is appropriate to reflect the seriousness of defendant's conduct and deter others who may be considering similar schemes. Courts have noted that "because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime

14

candidates for general deterrence." *United States v. Livesay*, 587 F.3d 1274, 1279 (11th Cir. 2009). In fraud cases like this one, individuals like the defendant make a calculated decision that the risk of being caught and punished is worth the illicit proceeds they can receive. A sentence of 63 months is necessary to affect that calculus, so that others will know that a substantial sentence will result from their decision to defraud Medicare. If defendants know that they will be subjected to significant periods of time in prison, then they will revise their calculations, and decide that the money to be gained from such fraud schemes is not worth the risk of incarceration.

### 4. The Need to Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) requires the Court to impose a sentence to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. A sentence within the Guidelines range is usually the best way to avoid sentencing disparities. *See United States v. Mares*, 402 F.3d 511, 518-19 (5th Cir. 2005).

Here, defendant is the most culpable of the defendants engaged in the Medicare fraud scheme at issue here. Coconspirators Roderick therapists Concepcion and Canlapan have plead guilty, and only codefendant Grace Hong, defendant's wife, has not plead guilty.

### 5. Kinds of Sentences Available

The maximum penalty for Count One charging Health Care Fraud Conspiracy in violation of 18 U.S.C. § 1349 is 10 years' imprisonment and a fine of $250,000 or twice the gross gain or loss, whichever is greater. There is also a maximum three years' supervised release and a mandatory special assessment of $100.

**V.   Conclusion**

For the foregoing reasons, the United States requests the Court should apply the Guidelines calculations set for in this sentencing memorandum, and find that the defendant has an offense level 25. Based on Criminal History Category II, this Court should find an advisory Guidelines range of 63-78 months' imprisonment. Based on this range, the United States respectfully recommends the Court sentence defendant to a term of 63 months' imprisonment, to be served concurrently with defendant's sentence in Case No. CR 16-0038-DOC, and to be followed by a three-year term of supervised release, and a restitution order of $2,407,857.16.

Dated: February 26, 2017       Respectfully submitted,

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

  /s/
NIALL M. O'DONNELL
Trial Attorney
Criminal Division, Fraud Section
United States Department of Justice

Attorneys for Plaintiff
UNITED STATES OF AMERICA